# EXHIBIT A

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

MARIA HOOPER,
      Plaintiff,

versus

JAMES E. WALLACE,
and
MERRILL LYNCH
PIERCE, FENNER &
SMITH, INC.,
      Defendants.

Civil Action File Number:

_2011CV197969_

**JURY OF TWELVE
DEMANDED**

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

> Randy L. New, Esq.
> Joyce E. Kitchens, Esq.
> Kitchens New Cleghorn, LLC
> 2973 Hardman Court
> Atlanta, Georgia 30303
> Telephone: (678) 244-2880

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, or, if service by publication, within 60 days of judge's order of publication, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 17th day of March, 2011.

CLERK OF SUPERIOR COURT OF
FULTON COUNTY

BY: _____
      DEPUTY CLERK

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

MARIA HOOPER,
    Plaintiff,

versus

JAMES E. WALLACE,
and
MERRILL LYNCH
PIERCE, FENNER &
SMITH, INC.,
    Defendants.

**Civil Action File Number:**

_____

**JURY OF TWELVE
DEMANDED**

### SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

Randy L. New, Esq.
Joyce E. Kitchens, Esq.
Kitchens New Cleghorn, LLC
2973 Hardman Court
Atlanta, Georgia 30303
Telephone: (678) 244-2880

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, or, if service by publication, within 60 days of judge's order of publication, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This 17th day of March, 2011.

CLERK OF SUPERIOR COURT OF
FULTON COUNTY

BY: _____
    DEPUTY CLERK

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

**MARIA HOOPER,**
    **Plaintiff,**

    **versus**

**JAMES E. WALLACE,**
**and**
**MERRILL LYNCH**
**PIERCE, FENNER &**
**SMITH, INC.,**
    **Defendants.**

**Civil Action File Number:**

_2011 CV 197969_

**JURY OF TWELVE**
**DEMANDED**

FILED IN OFFICE

MAR 17 2011

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### COMPLAINT

COMES NOW, MARIA HOOPER (hereafter "Hooper") and files this complaint against her former employer, MERRILL LYNCH, PIERCE, FENNER & SMITH, INC. ("Merrill Lynch"), and JAMES E. WALLACE ("Wallace"), Hooper's supervisor and an employee of Merrill Lynch. Defendant Wallace and Defendant Merrill Lynch, shall be collectively referred to as "Defendants".

### PARTIES, JURISDICTION & VENUE

1.     Maria Hooper is a resident of Cobb County, Georgia and submits to the jurisdiction of this Court.

2.     James E. Wallace resides at 2055 Clay Drive, Atlanta, GA 30350, Fulton County, Georgia, and is subject to the jurisdiction of this court. He may be

served at his home address, or at his office at 3455 Peachtree Road, Suite 1000, Atlanta, GA 30328.

3.   Merrill, Lynch, Pierce, Fenner & Smith is a foreign corporation doing business in Fulton County, Georgia, and subject to the jurisdiction of this Court. It may be served by its agent for service of process, CT Corporation System, at 1201 Peachtree Street NE, Atlanta, GA  30361.

4.   Jurisdiction and venue are proper in this Court.

## STATEMENT OF FACTS

5.   Hooper was employed in the Atlanta office of Merrill Lynch from May 2008 through March 2010 as a Client Associate, which title was a Merrill Lynch job title advertised internally and to the public.  In October 2009, Hooper's title was changed to "Executive Assistant," but she remained a "Client Associate" for all purposes related to compensation.

6.   Hooper was told that her responsibilities as a member of the Wallace Team would be to assist Wallace in his responsibilities as CEO including handling business contacts and events with third parties who were clients or the like of Merrill Lynch.

7.   Hooper was one of several employees who had the title of Client Associate in the Atlanta office.

2

8.  Hooper's salary at Merrill Lynch was to be paid from two sources: Hooper was to be paid an annual salary of approximately Forty-Three Thousand Dollars ($43,000) per year from Merrill Lynch, and an additional Forty-Eight Thousand Dollars ($48,000) per year from the Wallace Team, for a total salary of Ninety-One Thousand Dollars ($91,000).

9.  Also, as an employee of the Atlanta office of Merrill Lynch, and as one of several Client Associates, Hooper was also entitled to annual bonuses derived from three sources, based on the earnings of the Atlanta office: (1) an annual bonus paid by Merrill Lynch, (2) an annual bonus paid by the Wallace Team based on the team's performance that year, and (3) a personal bonus from James Wallace, paid from his executive discretionary spending account in his sole discretion.  In all, the bonuses were expected to increase Hooper's total compensation package by a range of $3,000 to $13,000 more per year.

10. With salary and bonuses received by her, Hooper's anticipated annual total compensation, as represented to her by Wallace and Merrill Lynch, was expected to be between $92,000 and $110,000 annually.

11. Wallace served as a "Senior Vice President and Financial Advisor" for Merrill Lynch.

3

12. Upon information and belief, Mr. Wallace was a tyrant and a bully who routinely assaulted and battered Merrill Lynch employees and members of the Wallace Team.

13. Upon information and belief, Mr. Wallace's behavior occurred with the apparent consent and approval of the company.

14. Over the entire period of time Hooper worked with the Wallace team, Wallace on numerous occasions assaulted and battered Hooper by throwing wet bathroom paper towels at her that he had used in the bathroom.

15. Over the entire period of time Hooper worked with the Wallace team, Wallace on numerous occasions assaulted and battered Hooper by blowing his nose, and then throwing the wadded-up used Kleenex at her.

16. Over the entire period of time Hooper worked with the Wallace team, Wallace on numerous occasions assaulted and battered Hooper by throwing crumpled wads of office paper at her.

17. Over the entire period of time Hooper worked with the Wallace team, Wallace, on a weekly basis, assaulted and battered Hooper by yelling "Heads up!" and then throwing a Spalding® hollow rubber ball (normally used for racquetball) at Hooper's head and body.

4

18. On or about March 26, 2009, Wallace became enraged when his office telephone would not work, and with Hooper standing one foot from him, punched the phone, breaking it, and causing pieces to fly into the air. Hooper was cut on the thumb by the flying debris, and began to bleed.

19. Based on Hooper's best information, this was not the first telephone Wallace had destroyed while at Merrill Lynch.

20. As a result of the abuse that she had suffered at the hands of Wallace, in March 2009, Hooper was treated by her doctor for ongoing migraines and depression.

21. On or about October 27, 2009, Wallace escalated his willful assault and battery of Hooper by intentionally tossing a fully inflated, hard basketball at Hooper's head.

22. The basketball struck Hooper in the face with such velocity that her telephone headset was knocked off of her head and her pierced earring was torn from her ear, where it skidded across her desk.

23. In addition to assaulting and battering Hooper on a regular basis, Wallace routinely screamed, yelled and cursed at Hooper in the office, over the phone, and off-premises in front of customers and others.

5

24. Based on Hooper's best information and belief, Wallace's behaviors towards her were widely known inside Merrill Lynch.

25. Based on Hooper's best information and belief, other employees of the Wallace Team observed and experienced the same abuse that Hooper suffered.

26. Upon information and belief, Wallace had been formally reprimanded before by Merrill Lynch for treating his previous executive assistants and others on his team in the way he treated Hooper.

27. Upon information and belief, Wallace was required to, and did, attend anger management sessions on a weekly, then bi-monthly basis, with an executive life coach, Robert F. Calabrese.

28. Upon information and belief, the cost of Wallace's sessions with Robert Calabrese were divided and paid for by both Wallace and Merrill Lynch.

29. Beginning in her first week of employment and throughout Hooper's time at Merrill Lynch, Hooper continually made reports to Merrill Lynch human resources personnel about Wallace's behavior.

30. On October 30, 2009, after Wallace threw the basketball at her head, Hooper reported the abuse and attacks of Wallace to the human resource officials in Merrill Lynch's Atlanta office.

6

31. Exactly as she feared, after Hooper reported Wallace's behavior to human resource personnel, Hooper was demoted from the Wallace Team's sales division of the Atlanta office into the administrative division of Merrill Lynch.

32. The job that Hooper was allowed to take in the administrative division was that of a file and copy clerk and back-up to the receptionist.

33. No job in the administrative division at that time paid the level of compensation that Hooper was making and that was promised to her.

34. Because Hooper was no longer working in the Wallace Team, she was no longer entitled to elements of the compensation she earned previously, thereby reducing her total compensation from over $92,000 per year to $47,000 per year.

35. Hooper was also told by Merrill Lynch that no permanent job was available at the company, and that she would have to apply for a potential opening that was allegedly becoming available.

36. Hooper suffered mental distress, depression and anxiety as a result of the tortious behavior by both Wallace and Merrill Lynch.

37. As a result of the health effects of the continued assault and battery of Wallace and Merrill Lynch's compensation-impacting retaliation, Hooper

7

was placed on medical leave by her neurologist. Merrill Lynch approved this leave.

38. After her period of leave, Hooper involuntarily resigned as an employee of Merrill Lynch.

39. Wallace's assaults and batteries against Hooper were performed while Wallace was conducting Merrill Lynch's business.

40. Wallace's actions were taken within the scope of Merrill Lynch's business.

41. At all times referenced herein, Wallace was acting as an agent of Merrill Lynch.

42. Upon Hooper's best information and belief, Wallace was not transferred, demoted, or in any way reprimanded for his behavior, and continues to work at Merrill Lynch.

43. Hooper sought other employment and managed to secure another position as an executive assistant to a chief operating officer but at approximately Thirty Thousand Dollars ($30,000) less compensation on an annual basis than she was paid either at her job at Merrill Lynch or with her previous employer, VT Services.

## STATEMENT OF CLAIMS

## COUNT 1 – INTENTIONAL FAILURE TO PAY OVERTIME WAGES IN VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA) AGAINST ALL DEFENDANTS

44.  Paragraphs 1-43 above are incorporated by reference.

45.  Hooper was a non-exempt "Employee" of Merrill Lynch, as defined by Section 203(e) of the FLSA, for the duration of the time she worked there.

46.  Merrill Lynch is an "Employer" as defined by Section 203(d) of the FLSA.

47.  Defendant Wallace is an "Employer" as defined by Section 203(d) of the FLSA because he directly supervised Hooper.

48.  During the three years prior to the filing of this action Defendants had a policy and practice of requiring or permitting their employees to work in excess of forty (40) hours in each work week without paying time and one half of the regular rate as required by the FLSA.

49.  Hooper, like all Client Associates at Merrill Lynch, was required by Merrill Lynch supervisors and human resources personnel to claim only 35 hours per week on her weekly timesheet, regardless of the number of actual hours worked.

50.  Wallace and Emily Fletcher explicitly instructed her to not track or report her overtime and instructed her to falsify her time records to indicate no

overtime was earned. See Exhibit "A" which is incorporated herein by reference.

51. Notwithstanding their instruction, Hooper did not falsify her overtime records but she diligently tracked her weekday overtime. See Exhibit "B" which is incorporated herein by reference.

52. Wallace routinely contacted Hooper for work-related reasons, on her vacation days, sick days, after hours, and on weekends, either by phone or e-mail, expecting an immediate response. If Hooper did not respond within approximately three minutes to any email or call, Wallace would begin barraging Hooper with a series of calls or emails, demanding to know where she was, and then cursing at her when he finally reached her by phone, for not being immediately available.

53. During the week, Hooper spent at least twenty hours per week off the clock, just responding to those requests by Wallace.

54. Hooper was frequently required by Wallace to spend several hours of her weekend time working off the clock by, among other things, booking hotels for various Merrill Lynch employees and clients, arranging for VIP upgrades on a Disney Cruise for Merrill Lynch's Director (Atlanta office), and making travel arrangements.

10

55. Wallace frequently directed Hooper to spend her weekends attending to his personal business, off the clock, and with no compensation whatsoever. For example, when Wallace traveled to Europe, he would order Hooper to go to his house to supervise his babysitter, by accompanying his children and the babysitter to the park and out to eat because he did not trust the babysitter.

56. On at least three occasions, Wallace ordered Hooper to go to his mother's house to help her pay her bills, close out credit cards, organize her medical files, or sit with her at the hospital, for up to six hours at a time.

57. On another occasion, Wallace directed Hooper to go to his house to supervise the repair of his front gate by the gate repair company he had hired.

58. On several occasions, Wallace ordered Hooper to go pick up his daughter from school.

59. In March 2009, Merrill Lynch personnel indicated that a new company policy required all overtime, defined as more than 35 hours per week, to be pre-approved as described in Exhibit A.

60. Hooper complied with this policy by seeking pre-approval, but was not paid for the overtime even though she continued to be required to work longer hours.

61.   Defendants violated the FLSA by willfully and unlawfully failing to pay
      Hooper one and a half times her regular wages for each hour worked in
      excess of 40 hours per week.

62.   Based upon records kept by Hooper, pursuant to 29 U.S.C §216(b), Hooper
      is entitled to her unpaid overtime compensation in the amount of $
      44,221.12, plus an additional equal amount as liquidated damages as further
      described in   Exhibit B.

63.   Pursuant to 29 U.S.C. §216(b) and 29 U.S.C. §207, Hooper is entitled to her
      post-judgment interest, attorneys' fees and costs for Merrill Lynch's failure
      to pay her the overtime she had earned.

## COUNT 2 – ASSAULT & BATTERY AGAINST ALL DEFENDANTS

64.   Paragraphs 1-43 are incorporated by reference.

65.   Wallace intentionally made harmful and offensive contact with Hooper on
      multiple occasions, primarily by throwing various items at her.

66.   Wallace threw things at Hooper with the intention of causing Hooper
      physical or psychological injury.

67.   At all times, Wallace was acting as agent for Merrill Lynch.

68.   After Hooper complained about the assaults and batteries, she was demoted
      to a position of less compensation, benefits, and status.

12

69.   Upon information and belief, Wallace was not demoted.

70.   By its demotion of Hooper, and failure to demote Wallace, Merrill Lynch

ratified Wallace's assaults and batteries against Hooper.

71.   Hooper has incurred medical expenses as a result of the physical assault and

battery of her by Wallace.

72.   Hooper has suffered mental and emotional distress as a result of the physical

assaults and batteries of her by Wallace.

73.   As a result of the assaults and batteries, Ms. Hooper suffered monetary and

non-monetary injuries for which each of the Defendants is separately and

jointly liable.

74.   As a result of the assaults and batteries, Ms. Hooper is entitled to recover her

attorney's fees for which each of the Defendants is separately and jointly

liable.

75.   As a result of the assaults and batteries, Hooper is entitled to punitive

damages for which each of the Defendants is separately and jointly liable.

76.   As a result of the assaults and batteries, Hooper is entitled to recovery all of

her costs of litigation, for which each of the Defendants is separately and

jointly liable.

## COUNT 3 – INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS AGAINST ALL DEFENDANTS

77.  Hooper restates the allegations contained in paragraphs 1-43 and 63-78
    above.

78.  Wallace intentionally sought to intimidate and injure Hooper on one or more
    occasions with outrageous conduct by screaming and cursing at her in front
    of others, and by assaulting and battering her.

79.  Wallace's battering, yelling, and cursing at Hooper caused her to feel
    humiliated and frightened.

80.  Wallace's conduct directly caused Hooper to suffer several types of
    monetary and other damages as a result of the intentional infliction of
    emotional distress.

81.  At all times, Wallace was acting as agent for Merrill Lynch.

82.  Merrill Lynch continued to employ Wallace after receiving notice of
    Wallace's misconduct. After Hooper complained about her emotional
    distress caused by Wallace, she was demoted to a position of lower
    compensation, benefits, and status.

83.  Upon information and belief, Wallace was not demoted.

14

84.   By its demotion of Hooper, and failure to demote or reprimand Wallace,
      Merrill Lynch ratified Wallace's intentional infliction of emotional distress
      against Hooper.

85.   Upon information and belief, by its demotion of Ms. Hooper, and failure to
      demote Wallace, Merrill Lynch ratified Wallace's assaults and batteries
      against Hooper.

86.   As a result of the intentional infliction of emotional distress, Hooper
      suffered injuries for which each of the Defendants is separately and jointly
      liable.

87.   As a result of the intentional infliction of emotional distress, Hooper is
      entitled to recover her attorneys' fees for which each of the Defendants is
      separately and jointly liable.

88.   As a result of the intentional infliction of emotional distress, Hooper is
      entitled to punitive damages for which each of the Defendants is separately
      and jointly liable.

89.   As a result of the intentional infliction of emotional distress, Hooper is
      entitled to recover all of her costs of litigation, for which each of the
      Defendants is separately and jointly liable.

15

## COUNT 4 – UNJUST ENRICHMENT AGAINST ALL DEFENDANTS

90.    Hooper restates the allegations contained in paragraphs 1-12 and 45-64
       above.

91.    By working for Merrill Lynch without appropriate pay for all time worked,
       including after hours, off-the-clock work, and late night/early morning calls
       during Hooper's vacation days and sick days, Hooper and any other
       similarly-situated employees conferred a substantial benefit on Merrill
       Lynch.

92.    Merrill Lynch's practice of requiring and obtaining uncompensated labor,
       and/or omitting hours worked from payroll records, allowed Merrill Lynch
       to generate additional profits and increase profitability.

93.    Merrill Lynch unlawfully retained the wages earned by Hooper and used
       those funds to generate further profits.

94.    Hooper did not provide this free labor voluntarily, but with the expectation
       that she would be compensated for it.

95.    Merrill Lynch is liable to Hooper for all unpaid labor.

96.    Merrill Lynch has purposefully and with premeditation failed and
       maliciously refused to pay for the unpaid labor, in conscious disregard for
       Hooper's rights.

16

97.    Merrill Lynch should be required to disgorge such profits and return them to

       Hooper.

## COUNT 5 – NEGLIGENT SUPERVISION AGAINST MERRILL LYNCH

98.    Hooper restates the allegations contained in all paragraphs above.

99.    Ms. Hooper and Wallace were employees of Merrill Lynch.

100.   Wallace acted as agent for Merrill Lynch at all times referenced herein.

101.   Upon information and belief, Merrill Lynch knew, or should have known,

       that Wallace was likely to assault, batter, intimidate, and inflict emotional

       distress on the Ms. Hooper because Wallace had done these same or similar

       acts to previous executive assistants and other in the past.

102.   Despite having knowledge of Wallace's propensity for abusing his

       subordinates, Merrill Lynch failed to protect Hooper from the assaults,

       batteries, and emotional distress Wallace inflicted upon Hooper.

103.   After Hooper complained about Wallace's assaults, batteries, and infliction

       of emotional distress, she was demoted to a position of less compensation,

       benefits, and status.

104.   Upon information and belief, Wallace was not demoted.

17

105. By its demotion of Ms. Hooper, and failure to demote Wallace, Merrill
     Lynch ratified Wallace's assaults, batteries, and intentional infliction of
     emotional distress against Hooper.

106. As a direct result of Merrill Lynch's negligent supervision of Wallace,
     Hooper has suffered monetary, physical, and emotional damages.

107. As a result of Merrill Lynch's negligent supervision of Wallace, Hooper is
     entitled to recover her attorneys' fees.

108. As a result of Merrill Lynch's negligent supervision of Wallace, Hooper is
     entitled to punitive damages.

109. As a result of Merrill Lynch's negligent supervision of Wallace, Hooper is
     entitled to recovery all of her costs of litigation.

## Jury Demand

Hooper hereby demands a trial by jury of twelve of all issues in this action.

## Prayer for Relief

WHEREFORE, Ms. Hooper demands judgment against Defendants and
prays:

(a)    that Hooper be awarded her unpaid overtime wages in the amount of
       $44,221.12, plus interest, liquidated damages in an equal amount,
       attorney's fees and costs;

18

(b)    that Hooper otherwise be awarded damages as a result of the Defendants'
       assault, battery, fraud, intentional infliction of emotional distress, and
       unjust enrichment, and for Merrill Lynch's negligent supervision, in an
       amount to be determined by the enlightened conscience of the jury;

(c)    that Hooper be awarded punitive damages against Wallace and Merrill
       Lynch in an amount to be determined by jury;

(d)    that Hooper be awarded her costs in this matter;

(e)    that Hooper be awarded her attorneys' fees in this matter;

(f)    that this Court award such other relief as the Court deems just and proper.

Respectfully submitted, this 17th day of March, 2011.

KITCHENS NEW CLEGHORN LLC

By:   _____

RANDY L. NEW
Georgia Bar No. 539540
JOYCE E. KITCHENS
Georgia Bar No. 424290

2973 Hardman Court
Atlanta, GA 30305
Telephone: 678-244-2880
Fax: 678-244-2883
randy.new@knclawfirm.com
joyce.kitchens@knclawfirm.com
*Counsel for Plaintiff*

19

# EXHIBIT A

## Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA)

| | |
|---|---|
| **From:** | Fletcher, Emily (GCIAS-ATLANTA BUCKHEAD, GA) |
| **Sent:** | Friday, March 20, 2009 1:30 PM |
| **To:** | Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA) |
| **Subject:** | RE: CA Meeting Notes |

No problem. Let's discuss, because I want you to be completely comfortable.

Thanks,

Emily

**From:** Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA)
**Sent:** Friday, March 20, 2009 11:52 AM
**To:** Fletcher, Emily (GCIAS-ATLANTA BUCKHEAD, GA)
**Subject:** RE: CA Meeting Notes

Emily:

This is not what I feel I need, it's what management is mandating. They already know when we log in/out, so why all of a sudden the need to force a time sheet entry. I'm not comfortable with this and it's obvious we need to have a discussion; next week is fine.

Regards,
**Maria N. Hooper**
Executive Assistant to James E. Wallace
Merrill Lynch Global Corporate & Institutional Advisory Services (GCIAS)
The Pinnacle, 3455 Peachtree Road, NE, Suite 1000, Atlanta, GA 30326
| Tel. 404 264 6024 | Faxination: 678 905 5558 | Cell: 678 637 2635 |

**From:** Fletcher, Emily (GCIAS-ATLANTA BUCKHEAD, GA)
**Sent:** Friday, March 20, 2009 8:54 AM
**To:** Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA)
**Subject:** RE: CA Meeting Notes

Maria,

I understand and appreciate the commitment you have made in working for the team with a "whatever it takes" attitude. The firm will only pay for 35 hours of salary and anything over is considered overtime. If you feel that you need to write down more hours, let's review together so it can be pre-approved.

You did read that correctly. Any non-registered CA's will need to rotate switchboard coverage. I'm currently working with mgmt to see what we can do, so I will let you know if anything changes.

Emily

**From:** Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA)
**Sent:** Friday, March 20, 2009 8:45 AM
**To:** Fletcher, Emily (GCIAS-ATLANTA BUCKHEAD, GA)
**Subject:** RE: CA Meeting Notes

Since our workweek is 35 hours, and I obviously work more than these hours I will not be able to correctly fill out my time sheet. How am I supposed to handle the situation? Also she said no registered CA's have to rotate on switchboard, did I read that incorrectly?

1

. · · .

# EXHIBIT A

Regards,
**Maria N. Hooper**
Executive Assistant to James E. Wallace
Merrill Lynch Global Corporate & Institutional Advisory Services (GCIAS)
The Pinnacle. 3455 Peachtree Road, NE. Suite 1000, Atlanta, GA 30326
| Tel: 404 264 6024 | Faxlnation: 678 905 5558 | Cell 678 637 2536 |

**From:** Fletcher, Emily (GCIAS-ATLANTA BUCKHEAD, GA)
**Sent:** Thursday, March 19, 2009 6:27 PM
**To:** Leek, K. Jami (ATLANTA BUCKHEAD, GA); Walsh, Courtney (ATLANTA BUCKHEAD, GA); Nix, Michele (ATLANTA BUCKHEAD, GA); Hill, Leslie (ATLANTA BUCKHEAD, GA); Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA); Kelly, Rachael (GCIAS-ATLANTA BUCKHEAD, GA); Carmel, Rachelle (ATLANTA BUCKHEAD, GA); Polhill, Mellie (ATLANTA BUCKHEAD, GA); 'NanaLindr1@aol.com'; Hunt, Mary (ATLANTA BUCKHEAD, GA)
**Subject:** Fw: CA Meeting Notes


Team,

I just wanted to reiterate Denise's message around overtime. Since overtime is charged back to the team, any overtime will need to be pre-approved. Please let me know of any overtime hours and we can review together for approval.

Thanks,

Emily
--------------------------
Sent using BlackBerry


**From:** Wilkins, Denise (ATLANTA BUCKHEAD, GA)
**To:** Brown, Cheryl (ATLANTA BUCKHEAD, GA); Browning, Nancy (ATLANTA BUCKHEAD, GA); Bryant, Janelle (ATLANTA BUCKHEAD, GA); Carmel, Rachelle (ATLANTA BUCKHEAD, GA); Dennis, Lori (ATLANTA BUCKHEAD, GA); Frey, Alida (ATLANTA BUCKHEAD, GA); Furey, Patrick (ATLANTA BUCKHEAD, GA); Garmon, Susan (ATLANTA BUCKHEAD, GA); Hill, Leslie (ATLANTA BUCKHEAD, GA); Hoyt, Nathan (ATLANTA BUCKHEAD, GA); Hunt, Mary (ATLANTA BUCKHEAD, GA); Justice, Alexandria (ATLANTA BUCKHEAD, GA); Keen, Courtney (ATLANTA BUCKHEAD, GA); King, Patrick (ATLANTA BUCKHEAD, GA); Kise, Katherine (ATLANTA BUCKHEAD, GA); Locklear, Kimberly (ATLANTA BUCKHEAD, GA); Marshall, Dan (ATLANTA BUCKHEAD, GA); Miller, Amy (ATLANTA BUCKHEAD, GA); Moonan, Paul (ATLANTA BUCKHEAD, GA); Munson, Stacey (ATLANTA BUCKHEAD, GA); Murray, Linda A (ATLANTA BUCKHEAD, GA.); Ogletree, Carolyn (ATLANTA BUCKHEAD, GA); Parris, Pauline (ATLANTA BUCKHEAD, GA); Polhill, Mellie (ATLANTA BUCKHEAD, GA); Reddin, Louise (ATLANTA BUCKHEAD, GA); Reese, Amanda (ATLANTA BUCKHEAD, GA); Reilly, Linda (ATLANTA BUCKHEAD, GA); Ross, Debra (ATLANTA BUCKHEAD, GA); Sager, Christine (ATLANTA BUCKHEAD, GA); Sipple, Sarah (ATLANTA BUCKHEAD, GA); Stalker, Derek (ATLANTA BUCKHEAD, GA); Stinziano, Lisa (ATLANTA BUCKHEAD, GA); Walsh, Courtney (ATLANTA BUCKHEAD, GA); Nix, Michele (ATLANTA BUCKHEAD, GA); Carnle, Debra (ATLANTA BUCKHEAD, GA); Cosby Jr., Jack (ATLANTA BUCKHEAD, GA); DePaolo, M (ATLANTA BUCKHEAD, GA); Doe, Norm (ATLANTA BUCKHEAD AG 706); Leek, K. Jami (ATLANTA BUCKHEAD, GA); Rentschler, Bambi (ATLANTA BUCKHEAD, GA); Smith, Linda (PEACHTREE CITY, GA); Buck, Cynthia (PEACHTREE CITY, GA); Proveaux, Donna (PEACHTREE CITY, GA); Cembrock, Jennifer (PEACHTREE CITY, GA); Starling, Lynn (ATLANTA BUCKHEAD, GA); Benson, Benjamin J (ATLANTA BUCKHEAD AG 706); Arjmand, Ava (ATLANTA BUCKHEAD, GA); Nicholson, John (ATLANTA BUCKHEAD, GA); Smith, Bruce (AdmMgr ATLANTA BUCKHEAD, GA); Vanjarla, Patricia (ATLANTA BUCKHEAD, GA); Archer, Lynn (ATLANTA BUCKHEAD, GA); Hooper, Maria (GCIAS-ATLANTA BUCKHEAD, GA); Fletcher, Emily (GCIAS-ATLANTA BUCKHEAD, GA); Bryant, Janelle (ATLANTA BUCKHEAD, GA); Starling, Lynn (ATLANTA BUCKHEAD, GA); Eldridge, Gini (ATLANTA BUCKHEAD, GA); Myers, Rusty (ATLANTA BUCKHEAD, GA); Bodnar, Donald (ATLANTA BUCKHEAD, GA); Bowen, Jacqueline (ATLANTA BUCKHEAD, GA); Brady, Ryan (ATLANTA BUCKHEAD, GA); Arjmand, Ava (ATLANTA BUCKHEAD, GA)
**Cc:** Allen, Deborah (ATLANTA BUCKHEAD, GA); Kegley, Teresa (ATLANTA BUCKHEAD, GA); Daniels, Ruth (ATLANTA BUCKHEAD, GA); Callender, Jeffrey (ATLANTA BUCKHEAD, GA); Duffey, Beth (ATLANTA BUCKHEAD, GA); Williams, Sabrina (ATLANTA BUCKHEAD, GA)
**Sent:** Wed Mar 18 10:37:43 2009
**Subject:** CA Meeting Notes

2

## EXHIBIT A

As a follow-up to this morning's CA meeting, below is clarity on the items covered:

- ***All overtime must be pre-approved.***   Attached is the pre-approval form which should be completed, signed and returned to my attention prior to the occurrence.
- All employees are required to complete a weekly time sheet (a pop-up reminder will be sent out shortly). Time-sheet direct can be accessed via Worldnet/Employee Resources/Comp & Timesheets/U.S. Timesheet Direct. There is also a tutorial on MLU (course ID# 134111). ***It is a firm policy that all non-exempt employees complete a weekly time-sheet as a recorded document of hours work regardless if overtime is submitted or not.***
- Regarding switchboard coverage, all non-registered CAs will be ***required to cover the replacement CAs lunch and vacations only*** at a maximum of 1 hour durations, CAs will not be responsible for covering on a full-time basis.  The front-desk will have a permanent replacement.
- Also attached is a one page doc highlighting a few ***helpful shortcuts*** compiled by Don Bodnar.  Thanks to Don for Sharing.

I know we are experiencing several changes and are forced to make hard decisions however, many of these decisions will allow us to navigate through these challenging market conditions.

Again, thank you to each and every one of you for your continued hard work and support.  I am always open for any ideas and/or suggestions that you may have.

Please let me know if you have any questions.
Thank you -


***Denise R. Wilkins***
Support Staff Supervisor

Merrill Lynch Global Private Client
3455 Peachtree Road, N.E.
Suite 1000
Atlanta, GA 30326
404-231-2540
FAX 404-890-7838

Spreadsheet of Overtime Hours for Maria Hooper

# EXHIBIT B

| Regular Salary Hours/Week (2 week pay periods) | Raw Time Worked | Converted Hours | Hours > 40 | Hours > 35 < 40 | 1.5 OT Hours on paycheck | Straight OT Hours on paycheck | Difference 1.5* | Difference Straight* |
|---|---|---|---|---|---|---|---|---|
| March 31, 2008 - April 6, 2008 | 52:35:00 | 52:58 | 12:58 | 5 | 0 | 0 | 23.83 | 10 |
| April 7, 2008 - April 13, 2008 | 51:15:00 | 51.25 | 11.25 | 5 | | | | |
| April 14, 2008 - April 20, 2008 | 51:19:00 | 51.32 | 11.32 | 5 | 0 | 0 | 23.07 | 10 |
| April 21, 2008 - April 27, 2008 | 51:45:00 | 51.75 | 11.75 | 5 | | | | |
| April 28, 2008 - May 4, 2008 | 56:45:00 | 56.75 | 16.75 | 5 | 0 | 0 | 32.93 | 10 |
| May 5, 2008 - May 11, 2008 | 56:11:00 | 56.18 | 16.18 | 5 | | | | |
| May 12, 2008 - May 18, 2008 | 52:17:00 | 52.28 | 12.28 | 5 | 0 | 0 | 27.05 | 10 |
| May 19, 2008 - May 25, 2008 | 54:46:00 | 54.77 | 14.77 | 5 | | | | |
| May 26, 2008 - June 1, 2008 | 66:26:00 | 66.43 | 26.43 | 5 | 7 | 0 | 48.88 | 10 |
| June 2, 2008 - June 8, 2008 | 69:27:00 | 69.45 | 29.45 | 5 | | | | |
| June 9, 2008 - June 15, 2008 | 47:24:00 | 47.4 | 7.4 | 5 | 0 | 0 | 17.1 | 10 |
| June 16, 2008 - June 22, 2008 | 49:42:00 | 49.7 | 9.7 | 5 | | | | |
| June 23, 2008 - June 29, 2008 | 50:20:00 | 50.33 | 10.33 | 5 | 0 | 0 | 10.33 | 9.67 |
| June 30, 2008 - July 6, 2008 | 39:40:00 | 39.67 | 0 | 4.67 | | | | |
| July 7, 2008 - July 13, 2008 | 39:15:00 | 39.25 | 0 | 4.25 | 0 | 0 | 10.05 | 9.25 |
| July 14, 2008 - July 20, 2008 | 50:03:00 | 50.05 | 10.05 | 5 | | | | |
| July 21, 2008 - July 27, 2008 | 50:01:00 | 50.02 | 10.02 | 5 | -7 | 0 | 26.42 | 10 |
| July 28, 2008 - Aug. 3, 2008 | 49:24:00 | 49.4 | 9.4 | 5 | | | | |
| Aug. 4, 2008 - Aug. 10, 2008 | 51:11:00 | 51.18 | 11.18 | 5 | 0 | 0 | 16.6 | 10 |
| Aug. 11, 2008 - Aug. 17, 2008 | 45:25:00 | 45.42 | 5.42 | 5 | | | | |
| Aug. 18, 2008 - Aug. 24, 2008 | 49:42:00 | 49.7 | 9.7 | 5 | 0 | 0 | 16.97 | 10 |
| Aug. 25, 2008 - Aug. 31, 2008 | 47:16:00 | 47.27 | 7.27 | 5 | | | | |
| Sept. 1, 2008 - Sept. 7, 2008 | 40:03:00 | 40.05 | 0.05 | 5 | 0 | 0 | 9.78 | 10 |
| Sept. 8, 2008 - Sept. 14, 2008 | 49:44:00 | 49.73 | 9.73 | 5 | | | | |
| Sept. 15, 2008 - Sept. 21, 2008 | 42:47:00 | 42.78 | 2.78 | 5 | 0 | 0 | 14.06 | 10 |
| Sept. 22, 2008 - Sept. 28, 2008 | 51:17:00 | 51.28 | 11.28 | 5 | | | | |
| Sept. 29, 2008 - Oct. 5, 2008 | 0:00 | 0 | 0 | 0 | 0 | 0 | 7.02 | 5 |
| Oct. 6, 2008 - Oct. 12, 2008 | 47:01:00 | 47.02 | 7.02 | 5 | | | | |
| Oct. 13, 2008 - Oct. 19, 2008 | 48:37:00 | 48.62 | 8.62 | 5 | 0 | 0 | 8.62 | 8.33 |
| Oct. 20, 2008 - Oct. 26, 2008 | 38:20:00 | 38.33 | 0 | 3.33 | | | | |

Spreadsheet of Overtime Hours for Maria Hooper

# EXHIBIT B

| Regular Salary Hours/Week (2 week pay periods) | Raw Time Worked | Converted Hours | Hours > 40 | Hours > 35 < 40 | 1.5 OT Hours on paycheck | Straight OT Hours on paycheck | Difference 1.5* | Difference Straight* |
|---|---|---|---|---|---|---|---|---|
| Oct. 27, 2008 - Nov. 2, 2008 | 48:39:00 | 48.65 | 8.65 | 5 | 0 | 0 | 15.33 | 10 |
| Nov. 3, 2008 - Nov. 9, 2008 | 46:41:00 | 46.68 | 6.68 | 5 | | | | |
| Nov. 10, 2008 - Nov. 16, 2008 | 0:00 | 0 | 0 | 0 | 0 | 0 | 8.4 | 5 |
| Nov. 17, 2008 - Nov. 23, 2008 | 48:24:00 | 48.4 | 8.4 | 5 | | | | |
| Nov. 24, 2008 - Nov. 30, 2008 | 24:13:00 | 24.22 | 0 | 0 | 0 | 0 | 11.2 | 5 |
| Dec. 1, 2008 - Dec. 7, 2008 | 51:12:00 | 51.2 | 11.2 | 5 | | | | |
| Dec. 8, 2008 - Dec. 14, 2008 | 49:18:00 | 49.3 | 9.3 | 5 | 0 | 0 | 16.25 | 10 |
| Dec. 15, 2008 - Dec. 21, 2008 | 46:57:00 | 46.95 | 6.95 | 5 | | | | |
| Dec. 22, 2008 - Dec. 28, 2008 | :19 | 0.32 | 0 | 0 | 0 | 0 | 0 | 0 |
| Dec. 29, 2008 - January 4, 2009 | 34:42:00 | 34.7 | 0 | 0 | | | | |
| January 5, 2009 - January 11, 2009 | 50:59:00 | 50.98 | 10.98 | 5 | 0 | 0 | 10.98 | 7.58 |
| January 12, 2009 - January 18, 2009 | 37:35:00 | 37.58 | 0 | 2.58 | | | | |
| January 19, 2009 - January 25, 2009 | 39:07:00 | 39.12 | 0 | 4.12 | 0 | 0 | 9.38 | 9.12 |
| January 26, 2009 - February 1, 2009 | 49:23:00 | 49.38 | 9.38 | 5 | | | | |
| February 2, 2009 - February 8, 2009 | 37:53:00 | 37.88 | 0 | 2.88 | 0 | 0 | 7.8 | 7.88 |
| February 9, 2009 - February 15, 2009 | 47:48:00 | 47.8 | 7.8 | 5 | | | | |
| February 16, 2009 - February 22, 200 | 34:29:00 | 34.48 | 0 | 0 | 0 | 0 | 0 | 4.67 |
| February 23, 2009 - March 1, 2009 | 39.4 | 39.67 | 0 | 4.67 | | | | |
| March 2, 2009 - March 8, 2009 | 47:55:00 | 47.92 | 7.92 | 5 | 0 | 0 | 15.54 | 10 |
| March 9, 2009 - March 15, 2009 | 47:37:00 | 47.62 | 7.62 | 5 | | | | |
| March 16, 2009 - March 22, 2009 | 49:53:00 | 49.88 | 9.88 | | 4.5 | 5 | 5.38 | -2.13 |
| March 23, 2009 - March 29, 2009 | 37:52:00 | 37.87 | 0 | 2.87 | | | | |
| March 30, 2009 - April 5, 2009 | 48:06:00 | 48.1 | 8.1 | 5 | 0 | 0 | 11.3 | 10 |
| April 6, 2009 - April 12, 2009 | 43:12:00 | 43.2 | 3.2 | 5 | | | | |
| April 13, 2009 - April 19, 2009 | 37:49:00 | 37.82 | 0 | 2.82 | 9.75 | 10 | -3.28 | -2.18 |
| April 20, 2009 - April 26, 2009 | 46:28:00 | 46.47 | 6.47 | 5 | | | | |
| April 27, 2009 - May 3, 2009 | 27:02:00 | 27.03 | 0 | 0 | 7.75 | 10 | 2.17 | -5 |
| May 4, 2009 - May 10, 2009 | 49:55:00 | 49.92 | 9.92 | 5 | | | | |
| May 11, 2009 - May 17, 2009 | 45:40:00 | 45.67 | 5.67 | 5 | 6.75 | 5 | 4.89 | 5 |
| May 18, 2009 - May 24, 2009 | 45:58:00 | 45.97 | 5.97 | 5 | | | | |

Spreadsheet of Overtime Hours for Maria Hooper

# EXHIBIT B

| Regular Salary Hours/Week (2 week pay periods) | Raw Time Worked | Converted Hours | Hours > 40 | Hours > 35 < 40 | 1.5 OT Hours on paycheck | Straight OT Hours on paycheck | Difference 1.5* | Difference Straight* |
|---|---|---|---|---|---|---|---|---|
| May 25, 2009 - May 31, 2009 | 0:00 | 0 | 0 | 0 | 4.25 | 5 | -0.17 | 0 |
| June 1, 2009 - June 7, 2009 | 44:05:00 | 44.08 | 4.08 | 5 | | | | |
| June 8, 2009 - June 14, 2009 | 46:19:00 | 46.32 | 6.32 | 5 | 6.58 | 7.33 | -0.26 | -2.33 |
| June 15, 2009 - June 21, 2009 | 18:03 | 18.05 | 0 | 0 | | | | |
| June 22, 2009 - June 28, 2009 | 47:50:00 | 47.83 | 7.83 | 5 | 8.58 | 5 | -0.75 | 3.53 |
| June 29, 2009 - July 5, 2009 | 38:32:00 | 38.53 | 0 | 3.53 | | | | |
| July 6, 2009 - July 12, 2009 | 45:30:00 | 45.5 | 5.5 | 5 | 10.91 | 10 | -3.51 | 0 |
| July 13, 2009 - July 19, 2009 | 41:54:00 | 41.9 | 1.9 | 5 | | | | |
| July 20, 2009 - July 26, 2009 | 47:39:00 | 47.65 | 7.65 | 5 | 4.92 | 5 | 2.73 | 0 |
| July 27, 2009 - Aug. 2, 2009 | 22:10:00 | 22.17 | 0 | 0 | | | | |
| Aug. 3, 2009 - Aug. 9, 2009 | :34 | 0.57 | 0 | 0 | 5.08 | 5 | -0.71 | 0 |
| Aug. 10, 2009 - Aug. 16, 2009 | 44:22:00 | 44.37 | 4.37 | 5 | | | | |
| Aug. 17, 2009 - Aug. 23, 2009 | 46:53:00 | 46.88 | 6.88 | 5 | 6.33 | 5 | 6.4 | 5 |
| Aug. 24, 2009 - Aug. 30, 2009 | 45:51:00 | 45.85 | 5.85 | 5 | | | | |
| Aug. 31, 2009 - Sept. 6, 2009 | 46:47:00 | 46.78 | 6.78 | 5 | 11.75 | 10 | -4.97 | -5 |
| Sept. 7, 2009 - Sept. 13, 2009 | 0 | 0 | 0 | 0 | | | | |
| Sept. 14, 2009 - Sept. 20, 2009 | 47:08:00 | 47.13 | 7.13 | 5 | 7.33 | 5 | 7.03 | 5 |
| Sept. 21, 2009 - Sept. 27, 2009 | 47:14:00 | 47.23 | 7.23 | 5 | | | | |
| Sept. 28, 2009 - Oct. 4, 2009 | 47:58:00 | 47.97 | 7.97 | 5 | 14.83 | 10 | 4.66 | 0 |
| Oct. 5, 2009 - Oct. 11, 2009 | 51:31:00 | 51.52 | 11.52 | 5 | | | | |
| Oct. 12, 2009 - Oct. 18, 2009 | 44:53:00 | 44.88 | 4.88 | 5 | 15.08 | 10 | -2.85 | 0 |
| Oct. 19, 2009 - Oct. 25, 2009 | 47:21:00 | 47.35 | 7.35 | 5 | | | | |
| Oct. 26, 2009 - Nov. 1, 2009 | 47:06:00 | 47.1 | 7.1 | 5 | 8.58 | 5 | 2.27 | 5 |
| Nov. 2, 2009 - Nov. 8, 2009 | 43:45:00 | 43.75 | 3.75 | 5 | | | | |
| Nov. 9, 2009 - Nov. 15, 2009 | 35:00:00 | 35 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 188.258333 | 3613.15 | 550.89 | 340.72 | 132.97 | 112.33 | 417.92 | 228.39 |

* The difference between the number of hours that the client shows she worked and what her paycheck actually pays her for.
Yearly regular pay

$47,940.10

Spreadsheet of Overtime Hours for Maria Hooper

# EXHIBIT B

| Regular Salary Hours/Week (2 week pay periods) | Raw Time Worked | Converted Hours | Hours > 40 | Hours > 35 < 40 | 1.5 OT Hours on paycheck | Straight OT Hours on paycheck | Difference 1.5* | Difference Straight* |
|---|---|---|---|---|---|---|---|---|
| Reg Salary per pay period for 70 hours | # reg hours/period | Regular Hourly rate | OT rate | Reg. 1.5 OT rate | $ 1.5 OT owed but not paid* | $ Straight Time owed but not paid** | Total Regular Salary OT owed but not paid | |
| $1,843.85 | 70 | $26.34 | 1.5 | $39.51 | $16,512.47 | $6,015.96 | $22,528.42 | |

* The total for column H times Regular 1.5 OT rate.

** The total for column I times the Regular hourly r

## Spreadsheet of Overtime Actually paid on Team Checks from 5/12/08 tc

| Date Paid | OT Paid | Salary Paid |
|---|---|---|
| 12/7/2009 for month of Nov. | $654.08 | $2,535.99 |
| 11/9/2009 for month of Oct. | $612.61 | $2,535.99 |
| 10/5/2009 for month of Sept. | $499.82 | $2,535.99 |
| 9/4/2009 for month of Aug. | $276.45 | $2,535.99 |
| 8/10/2009 for month of July | $720.71 | $2,535.99 |
| 7/6/2009 for month of June | $183.48 | $3,854.00 |
| 6/8/2009 for month of May | $583.54 | $3,854.00 |
| 5/4/2009 for month of April | $150.05 | $3,854.00 |
| 4/6/2009 for month of March | $0.00 | $3,854.00 |
| 3/9/2009 for month of February | $0.00 | $3,854.01 |
| 2/9/2009 for month of January | $0.00 | $3,854.01 |
| 1/5/2009 for month of Dec. | $0.00 | $3,854.01 |
| 12/8/2008 for month of Nov. | $0.00 | $3,854.01 |
| 11/10/2008 for month of Oct. | $0.00 | $3,854.01 |
| 10/6/2008 for month of Sept. | $0.00 | $3,854.01 |
| 9/8/2008 for month of Aug. | $0.00 | $3,854.01 |
| 8/11/2008 for month of July | $0.00 | $4,166.99 |
| 7/7/2008 for month of June | $56.81 | $3,750.02 |
| 6/9/2008 for month of May | $0.00 | $3,750.02 |
| 5/12/2008 for month of April | $0.00 | $3,750.02 |
| Total | $3,737.55 | $70,491.07 |

Page 4

Spreadsheet of Overtime Hours for Maria Hooper

# EXHIBIT B

| Regular Salary Hours/Week (2 week pay periods) | Raw Time Worked | Converted Hours | Hours > 40 | Hours > 35 < 40 | 1.5 OT Hours on paycheck | Straight OT Hours on paycheck | Difference 1.5* | Difference Straight* |
|---|---|---|---|---|---|---|---|---|
| Hourly Rate for Team Salary*** | 1.5 OT Rate Team | Straight OT Team Due per client* | | | 1.5 OT Team Due per client** | Team OT $ owed but not paid **** | | |
| 21.7900989 | 32.6851484 | $7,424.32 | | | $18,005.92 | $21,692.69 | | |

52
35
1.5

* Total from column E above times the regular Team hourly rate

** Total from column D above times the 1.5 Team hourly rate.

***Total compensation from 1/5/09 to 12/7/09 divided by 52 weeks divided by 35 hours

****The Team paychecks do not distinguish how much compensation is for Straight OT and how much is for 1.5 OT. It's just one lump payment of OT.

| | |
|---|---|
| Total Regular OT Owed But Not Paid by Merrill Lynch: | $22,528.42 |
| Total Team OT Owed But Not Paid by Wallace Team: | $21,692.69 |
| Total Unpaid Overtime: | $44,221.12 |

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **MARIA HOOPER,**<br>    **Plaintiff,** | **Civil Action File Number:** |
| **versus** | _____ |
| **JAMES E. WALLACE**<br>**and**<br>**MERRILL LYNCH**<br>**PIERCE, FENNER &**<br>**SMITH, INC.**<br>    **Defendants.** | **JURY TRIAL DEMANDED** |

## VERIFICATION

I, **MARIA HOOPER**, after being duly sworn, state that the facts

contained in the foregoing Complaint are true and correct to the best of my

knowledge and belief.  To the extent the information was obtained from

others, I have relayed this information as accurately as possible.

This ___3___ day of December, 2010.

_____
MARIA HOOPER

Sworn and subscribed before me this
___3rd___ day of ___December___

_____
Notary Public (SEAL)